**In re Melvin Lane POWERS, Debtor.**

**Jeff A. COMPTON, Trustee, Plaintiff,**

**v.**

**Melvin Lane POWERS, Defendant.**

**Bankruptcy No. 83–05547–H3–7.
Adv. No. 87–0388–H3.**

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

April 5, 1989.

R. David Legg, Houston, Tex., for debtor/defendant.

Mark C. Harwell, Don Fogel, Morris & Campbell, Houston, Tex., for plaintiff.

## MEMORANDUM OPINION, FINDING OF FACTS AND CONCLUSIONS OF LAW

LETITIA Z. CLARK, Bankruptcy Judge.

Came on for hearing the 6th day of September, 1988 the post-trial Motion to Dismiss Wrongful Garnishment filed by defendant/Debtor, Melvin Lane Powers in adversary proceeding No. 87–0388–H3. After considering the pleadings, evidence, memoranda and arguments of counsel, the court makes the following findings of fact and conclusions of law and enters a separate judgment in connection herewith. To the extent any findings of fact herein are construed to be conclusions of law, they are hereby adopted as such. To the extent any conclusions of law herein are construed to be findings of fact, they are hereby adopted as such.

On December 29, 1983 Debtor filed his petition to reorganize pursuant to Chapter 11 of the Bankruptcy Code. The case was converted pursuant to 11 U.S.C. § 1112(b) to a Chapter 7 proceeding by Order entered on on November 12, 1986. Thereafter, J.A. Compton, Trustee, initiated Adversary No. 87–0388–H3 to recover assets of the Debtor under §§ 542, 548, 549 and 550 of the Bankruptcy Code. The action was founded upon claims of breach of fiduciary duties, conversion, fraudulent conveyances and alter ego liability. A lengthy trial was held, concluding, on June 3, 1988. The case is under advisement.

On May 4, 1988 in Adversary No. 87–0388–H3 the Trustee had filed an emergency application for prejudgment writ of garnishment against garnishees BancPlus Savings Association ("BancPlus"), and the law firm of Noe & Essex. The proceeds in question were the result of a settlement reached on Debtor's personal injury claim against Chemical Financial Corporation ("Chemical Financial") and its insurer, Avemco Insurance Company ("Avemco"). This claim arose while Debtor was a passenger aboard an aircraft owned by Chemical Financial, which crashed near Telluride, Colorado on December 29, 1987. The agreed settlement of $90,000.00 was paid by the insurer to Noe & Essex on behalf of Debtor and deposited into the BancPlus account. It is these funds that are the subject of the garnishment and Debtor's claim of wrongful garnishment.

Trustee's complaint is based on Debtor's alleged breach of fiduciary duty to the estate while acting as Debtor-in-Possession of the Chapter 11 proceeding. Specifically, Trustee's supporting affidavit states that the Debtor made numerous transfers of estate funds to related entities, without court authority. The unauthorized transfers identified were: 1) $81,000.00 and $50,000.00 paid to Garrett Powers, the Debtor's brother on May 3, 1985; 2) $50,000.00 and $1,912.50 paid to Powers Air Helicopters, Inc. on January 7, 1985 and February 1, 1985 respectively; 3) $10,981.00 paid to or on behalf of Whitman & Ransom, the Debtor's attorneys, for travel expenses during the period from November 29, 1984 to April 10, 1985. Exhibits "A", "B", "C" and "D" supporting the affidavit provide copies of cancelled checks drawn on the estate's Debtor-in-Possession account evidencing the transfers by the Debtor to Garrett Powers and Powers Air Helicopter, Inc. Exhibit "E" evidences the payments made on behalf of Whitman & Ransom. It is

therefore Trustee's contention that the Debtor is now liable to the estate for a debt that is due and unpaid.

On May 5, 1988 an emergency hearing was held before this court to determine whether the issuance of a prejudgment writ of garnishment was justified. Present at the proceeding were the Trustee, garnishees and the Debtor. After arguments were heard and evidence presented, this court determined that the Trustee had in good faith complied with this state's requirements for a prejudgment writ of garnishment. Tex.Civ.Prac. & Rem.Code § 63.001 (Vernon's 1981). An Order was granted the same day on Trustee's application for prejudgment writ of garnishment.

Thereafter, the Debtor filed a wrongful garnishment action against the Trustee in state court. This was subsequently removed to this court pursuant to Bankruptcy Rule 9027 and assigned Adversary No. 88–0629–H3. The Debtor's complaint prayed for dissolution of the writ plus thirteen million dollars in damages under theories of wrongful garnishment, tortious interference with business relations and intentional infliction of emotional distress. As a result of Debtor's action, the Trustee instigated adversary proceeding No. 88–0497–H3 on June 17, 1988 seeking declaratory relief that the garnishment was not wrongful. Because of the common issue in both Debtor's and Trustee's causes of action, the Debtor's proceeding (Adv. No. 88–0629–H3) was consolidated by Order entered January 6, 1989 with Trustee's declaratory action (Adv. No. 88–0497–H3) with all docketing to be under Adversary No. 88–0497–H3. (Docket No. 18.) This consolidated action is set for a supplemental status conference on May 30, 1989.

On September 6, 1988 a hearing was held on the Motion to Dismiss Wrongful Garnishment filed by Debtor in Adversary No. 87–0388–H3, at which time both sides presented evidence. Judgment was withheld pending this court's Order to both parties to submit briefs concerning Tex.Ins. Code Ann. Art. 21.22 (Vernon's 1981) which exempts certain types of insurance proceeds from garnishment. The controlling issue in the Motion to Dismiss Wrongful Garnishment filed in Adversary No. 87–0388–H3 is whether settlement proceeds claimed by the Debtor were wrongfully garnished.

■ The Debtor's basic argument asserts two reasons why the prejudgment writ of garnishment was wrongful. First, the Debtor contends that the proceeds received from Avemco are exempt from garnishment pursuant to Tex.Ins.Code Ann. Art. 21.22 (Vernon's 1981). That article provides in pertinent part that "[n]o money or benefits of any kind to be paid or rendered to insured or any beneficiary under any policy of insurance issued by a life, health, or accident insurance company ... shall be liable to execution, attachment or garnishment...." In order for settlement proceeds to be held exempt under the article, Debtor argues that Avemco is an accident insurance company, and that he is a beneficiary of the accident policy issued by the insurer. Here it is noted that Debtor freely admits in his pleadings and memoranda that Avemco is a casualty or liability insurance company. He states, however, that casualty or liability insurance is synonymous with accident insurance since under both types of insurance, the insurer's obligation to pay rests on the happening of an "accident."

The Debtor's argument in this area is misguided. Accident and liability insurance are not synonymous. Indeed, insurance authorities recognize a clear distinction between the two types of insurance. Accident insurance refers to personal insurance; in other words, the policy covers financial loss resulting from bodily injury to a specified insured or beneficiary. 1 Appleman, *Insurance Law and Practice* § 24 (1981). Furthermore, it is the insurance contract between the insured individual and insurer which is the basis for a right to payment and not the mere occurrence of an accident. 10 Couch, *Cyclopedia of Insurance Law* § 41:3 (rev. 2d ed. 1982).

In contrast, casualty or liability insurance focuses on protecting an insured against liability for damages committed by the insured against a third party's person

or property. Vance, *Handbook on the Law of Insurance* 999 (3rd ed. 1951). The injured third party is not a party to the contract nor a beneficiary but is merely the recipient of the proceeds. 11 Couch, § 44:3. Insurance authorities are unanimous on this distinction between accident and liability insurance. 1 Appleman, § 1; 10 Couch, § 41:3; 44 C.J.S. § 3; Vance at 942.

Although there is no state case law covering the distinction between accident and casualty insurance, the Tex.Ins.Code differentiates between the two types by providing two separate statutes governing the incorporation and operation of life, health, and accident companies and general casualty companies. *See respectively*, Art. 3.01 *et seq.* and Art. 8.01 *et seq.* It is also useful to note that the word "casualty" is not included in the subchapter heading for Art. 21.22, which is specifically entitled "Relating To Life, Health And Accident Insurance And Benefits." While statutory headings are not to be read as limiting the plain language of a statute's text, (*Brotherhood of Railroad Trainmen v. Baltimore and Ohio Railroad Co.*, 331 U.S. 519, 529, 67 S.Ct. 1387, 1392, 91 L.Ed. 1646 (1946)) the text of Art. 21.22 does not contain any language that can be read as including casualty insurance within the scope of the Article.

Finally, it is not possible for the aircraft liability policy issued to Chemical Financial by Avemco to be an accident policy under the Tex.Ins.Code. Article 3.01, § 8 of the Code defines "insured" or "policyholder" for purposes of life, health and accident insurance as being "the person on whose *life* a policy of insurance is effected" (emphasis added). The policyholder in this case is not a living person but rather a corporation. Also pertinent is Art. 3.70–2(A)(3), which governs accident and sickness policy forms. It reads in part "[n]o policy of accident and sickness insurance shall be delivered to any person unless it purports to insure only one person...." According to the terms of the policy, Avemco does not purport to insure any specifically named individual against bodily harm; it is insuring a fictitious legal entity against liability for torts committed on others unnamed. Debtor's name is found no where on the policy. He is not a party to the contract.

The court finds that Avemco is not an accident insurance company within the scope of Art. 21.22. Further, the court finds that the Debtor was not a beneficiary under an accident insurance policy issued by Avemco. Therefore, the settlement proceeds paid by Avemco to the Debtor pursuant to his personal injury claim are not exempt from garnishment under Art. 21.22.

■ The Debtor next contends that the Trustee has wrongfully garnished non-estate, personal assets in violation of 11 U.S.C. § 541. He argues that the insurance proceeds cannot be property of the estate under § 541 since the proceeds accrued to the Debtor more than four years after filing of the petition.

■ Notwithstanding the fact that the Debtor received these insurance proceeds postpetition, § 541 does not shield the Debtor from liability for any willful mismanagement of estate property. Trustees of an estate in bankruptcy are subject to personal liability for willful violations of fiduciary duties. *Mosser v. Darrow*, 341 U.S. 267, 71 S.Ct. 680, 95 L.Ed. 927 (1951); *In re Happy Time Fashions, Inc.*, 7 Bankr. 665, 670 (Bankr.S.D.N.Y.1980); *In re United Equipment Sales Co.*, 47 B.R. 818, 820 (Bankr.W.D.Mich.1985). Under 11 U.S.C. § 1107, a Debtor-in-Possession has the same fiduciary duties to the estate as a trustee appointed by the court. *In re Russell*, 60 B.R. 42, 47 (Bankr.W.D.Ark.1985).

Whether Debtor has breached his fiduciary duties with regard to estate property is one of the questions which must be resolved in arriving at a disposition of the underlying complaint, which is under advisement. It is not a proper subject of a post-trial, pre-judgment Motion to Dismiss Wrongful Garnishment.

Debtor's June 27, 1988 Motion to Dismiss Wrongful Garnishment is Denied.

The Debtor's request for damages for wrongful garnishment is denied. A sepa-

rate judgment will be entered on the Motion to Dismiss Wrongful Garnishment in Adversary No. 87–0388–H3.

It is so ORDERED.